## COMMISSIONER OF INTERNAL REVENUE v. LAIRD.

### No. 8413.

Circuit Court of Appeals, Fifth Circuit.

July 9, 1937.

Helen R. Carloss, Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., James W. Morris, Asst. Atty. Gen., and Morrison Shafroth, Chief Counsel, Bureau of Internal Revenue, and Frank T. Horner, Sp. Atty., Bureau of Internal Rev-

---

enue, both of Washington, D. C., for petitioner.

Robert Ash, of Washington, D. C., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

What is here for decision is whether respondent, beneficiary under a will, is taxable on oil payments and oil royalties as income before he has recouped their value as appraised for estate tax purposes. The Commissioner found that he was as to both. As to his royalties, he taxed all of them to him as income, allowing him, however, the statutory depletion. As to oil payments, he taxed 60 per cent. of them as recovery of cost, and 40 per cent. as income.

The Board found for the respondent, that neither the oil payments nor the royalties could be taxed to him as income, until their cost to him, as determined by the estate tax, had been received.

The case was submitted on a stipulation, which, though meager, sufficiently shows the following: Respondent is beneficiary under a will, of a 14/36 undivided interest in an estate in Texas lands consisting, among other things, of two distinct kinds of oil interests; (1) the right to receive royalties reserved in leases of mineral interests; (2) the right to receive oil payments reserved in sales of mineral interests.

For estate tax purposes, the oil royalties were valued by the Commissioner, and the tax was paid on them, at $84,295, the oil payments, an unpaid balance of $37,-722.06, were valued at 60 cents on the dollar, or $22,633. Respondents in 1932, the year in question, received on account of oil royalties 14/36 of $17,950.30, and on account of oil payments, 14/36 of $27,090.-73. He contended unsuccessfully with the Commissioner, but successfully before the Board, that the share of the oil royalties received by him was not taxable to him as income, because less than its value for estate tax purposes, and that of the oil payments he received, only that part was taxable income which was received by him in excess of the valuation for the estate tax.

Here respondent, become petitioner, assailing the Board's rulings on both accounts, invokes the settled course of decision that whatever may be the nature of oil royalties under Texas law,[1] they are, within the meaning of the federal revenue acts taxable as rental income. Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L. Ed. 199; Herring v. Com'r, 293 U.S. 322, 55 S.Ct. 179, 79 L.Ed. 389; c/f Com'r of Internal Revenue v. Fleming (C.C.A.) 82 F.(2d) 324, 325; Perkins v. Thomas (C.C.A.) 86 F.(2d) 954, affirmed 57 S.Ct. 911, 81 L.Ed. ——. He insists that the respondent, for income tax purposes, took as devisee a right to and received income in the nature of rentals exactly as he would have taken and received income, if the property left to him had been a rented building, or interest-bearing stocks and bonds.

Respondent, while conceding that royalties are taxable as income, insists that to tax him on account of them before he has received the cost or value of the devise would be to tax him on receipt of capital, not income. To petitioner's insistence that through the allowance of depletion respondent gets back his capital value, respondent replies that royalties may cease long before the appraised value is received, and that Burnet v. Logan, 283 U.S. 404, 51 S. Ct. 550, 75 L.Ed. 1143, is authority for it that royalty payments are not income until the appraised value of the devise has been received.

As to the oil payments, the Commissioner makes his case out by insisting that these payments in reserved minerals until the sum fixed is reached are the same in their legal incidents and effects as royalty payments, both being reservations of oil as and when produced, the only difference being that the oil payments are to continue until a definite sum or value is obtained from them, the royalty payments are to continue indefinitely. c/f Com'r of Internal Revenue v. Fleming, supra, where at page 327 of 82 F.(2d) it is said of oil payments:

"The real essence of the transaction was that the lease was sold and all the oil except that whose proceeds were to come to the selling taxpayer. The conveyances executed when the cash was paid might very appropriately have reserved or excepted sufficient oil from one-half of

[1] Stephens v. Stephens (Tex.Civ.App.) 292 S.W. 290; Chesson v. Com'r (C.C. A.) 57 F.(2d) 141; Com'r v. Wilson (C. C.A.) 76 F.(2d) 766; Turbeville v. Com'r (C.C.A.) 84 F.(2d) 307.

that thereafter run to pay the agreed sum. It is true that no royalty to continue indefinitely was reserved, and that the reservation was limited not to so many barrels nor to such a length of time, but to so much oil as would sell for the agreed sum. But it was in effect an exception or reservation of oil."

We agree with petitioner as to the royalty payments. With the course of federal decision as it is, it may not be contended but that in the hands of his aunt, who willed them to him, they were taxable as income subject to depletion. In his hands they are taxable the same way; for under that settled course of decision the royalties are paid to him not as returns of his capital right to receive them, but as annual income flowing from the ownership of that right.

As to the oil payments, we agree with respondent. The Commissioner's argument presses too far the royalty analogy. From the aspect of depletion, considered in the above cited cases, respondent's interest as the royalty owner and as the owner of reserved oil payments is the same; that is, as to both, he has an economic interest in the oil in place, and as to both, he is entitled to depletion. But here the likeness ceases.

As to the oil payments, respondent is the owner of a certain aggregate capital sum devised to him as such, and all payments received on that account are, until the devised value has been recovered, returns of capital.

As to the royalties, respondent is the owner of a right to receive a rental income from the workings of the leaseholds out of which the royalties issue. All such payments received by him are, in contemplation of federal income tax law, not receipts of capital, but of income, by way of rental. In the case of oil payments, until their capital value is received, no question of income arises. By the very nature of the contract for their reservation and payment each one made diminishes to that extent the capital interest reserved. Their total completely consumes it. It will not do, then, we think, to hold as the Board has held, that respondent in receiving royalty payments is, except as measured by the depletion allowance, receiving a return of capital. Nor, on the other hand, will it do as the Commissioner tries to do, to press the analogy between royalty and oil payments, workable and serviceable enough where depletion is in question, to the point of taxing as income what is inescapably a return of capital.

The order of the Board is reversed, and the cause is remanded to it with directions to compute respondent's taxes in accordance herewith.